UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MD TRANS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:26-cv-00381-SRC |
| | ) | |
| FOREST RIVER, INC. and | ) | |
| JASON SULLIVAN, | ) | |
| | ) | |
| Defendants. | ) | |

## Memorandum and Order

MD Trans, a recreational vehicle dealer, and Forest River, a recreational vehicle

manufacturer, agreed that MD Trans would serve as Forest River's exclusive dealer of certain

models within a defined territory.  But when Forest River allegedly failed to perform the

contract's terms, MD Trans filed suit against Forest River and its employee, Jason Sullivan.

Forest River and Sullivan move for partial dismissal of MD Trans's claims.  The Court takes up

the motion.

## I.    Factual background

The Court accepts the following facts as true for the purpose of deciding Forest River and

Sullivan's motion.  MD Trans is a recreational vehicle dealer based in Fenton, Missouri.  Doc. 5

at ¶ 1; doc. 5-1 at 1 (The Court cites page numbers as assigned by CM/ECF.).  Forest River, an

Indiana corporation, manufactures recreational vehicles.  Doc. 5 at ¶ 2; *see* doc. 5-1 at 1.  And

Forest River employs Jason Sullivan.  Doc. 5 at ¶ 3.

MD Trans contends that "Forest River, through representations by Mr. Sullivan and

others, specifically targeted [MD Trans] by promoting and touting [Forest River's] new products

and the parties' past and future business arrangements and made numerous representations on

which [MD Trans] relied[.]" *Id.* at ¶ 9.  Then in January 2024, MD Trans and Forest River entered into an RV Dealer Sales and Service Agreement (the "Agreement") "appointing [MD Trans] to be an exclusive 'dealer' of Forest River's 'Line Makes,' including, but not limited to V-Cruise, V-Sport, and V-Drive models."  *Id.* at ¶ 10 (incorporating the Agreement into MD Trans's complaint) (A "petition" in Missouri state court serves as the analogue of a federal "complaint," and the Court uses the latter term.); doc. 5-1 (the Agreement).

Under the Agreement, MD Trans had to "maintain minimum inventory levels of three V-Cruise units, two V-Drive units, and one V-Sport unit."  Doc. 5 at ¶ 12.  And it was obligated to meet "annual sales levels by unit" of "twenty V-Cruise units, ten V-Drive units, and five V-Sport units."  *Id.*  "[B]ased on [MD Trans's] experience in the market, [it] estimated that a much larger number of units would be sold on an annual basis if [Forest River] had honored its commitments and obligations owed to [MD Trans] under the Agreement."  *Id.* at ¶ 13.

Forest River also agreed to appoint MD Trans "as an authorized retail dealer for the sale of service of [Forest River's] 'Line Makes'" within an exclusive "50[-]mile radius, as the crow flies, from [MD Trans's] location."  Doc. 5-1 at 1–2; *see* doc. 5 at ¶ 14.  Finally, the Agreement states that it is "the entire agreement between the parties, and each acknowledges that any other agreement, statement, representation, or promise will not be binding unless executed in writing by [MD Trans] and by the authorized representative of [Forest River] and attached to this Agreement."  Doc. 5-1 at 8.

In response to the Agreement, MD Trans "undertook to build out the infrastructure necessary to offer the Forest River products it was now contractually required to offer, including expanding its lot and facilities, as well as all associated costs, such as increased insurance costs [and] payroll costs[.]"  Doc. 5 at ¶ 15.  But Forest River and Sullivan allegedly breached the

2

Agreement by not providing MD with: (i) "necessary materials" such as order forms and (ii) "the minimum inventory levels . . . having failed to have ever supplied one single vehicle to [it] for sale." *Id.* at ¶¶ 17–18. And Forest River allegedly "violated the Agreement further by improperly selling inventory to [MD Trans's] direct competitor, who operates within [its] contractual exclusive territory." *Id.* at ¶ 19. MD Trans avers that "[a]ll of this occurred in direct contravention of [Forest River and Sullivan's] obligations and requirements under the Agreement and to [MD Trans's] detriment[.]" *Id.* at ¶ 20.

## II.    Procedural background

MD Trans sued Forest River and Sullivan in state court. *See* doc. 5. MD Trans asserted a breach-of-contract claim against Forest River. *Id.* at ¶¶ 21–27. Against Forest River and Sullivan, MD Trans asserted the following claims: (i) negligent misrepresentation, *id.* at ¶¶ 28–33, (ii) intentional misrepresentation, *id.* at ¶¶ 34–41, and (iii) tortious interference with a business expectancy, *id.* at ¶¶ 42–50. Forest River and Sullivan removed this case to federal court. Doc. 1. Soon after, Forest River and Sullivan filed a partial motion to dismiss MD Trans's negligent-misrepresentation, intentional-misrepresentation, and tortious-interference claims. Doc. 12. Now with their motion fully briefed, docs. 13, 21, 22, the Court turns to address it.

## III.    Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient

3

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff." *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). But if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555. Nor does a "pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement" suffice. *Hamilton v. Palm*, 621 F.3d 816, 817–18 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Although courts must accept all factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 677–78.

Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679. Therefore, the Court must determine if the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id*. This "context-specific task" requires the Court to "draw on its judicial experience and common sense." *Id*.

4

**IV.    Discussion**

Because neither party disputes what law applies, *see generally* doc. 13 (applying Missouri law); doc. 21 (applying Missouri law), the Court applies Missouri law.  *See BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 961 n.3 (8th Cir. 2003).  Forest River and Sullivan argue that Missouri's economic-loss doctrine bars MD Trans's negligent-misrepresentation, intentional-misrepresentation, and tortious-interference claims.  Doc. 13 at 3–8.  And they argue that MD Trans didn't plead its claim for intentional misrepresentation with sufficient particularity as required by Federal Rule of Civil Procedure 9(b).  *Id.* at 8–10.  The Court addresses each argument in turn.

**A.    Economic-loss doctrine**

"Under Missouri law, 'the economic[-]loss doctrine prohibits a commercial buyer of goods from seeking to recover in tort for economic losses that are contractual in nature.'"  *Dunne v. Res. Converting, LLC*, 991 F.3d 931, 943 (8th Cir. 2021) (cleaned up) (citing *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 905–06 (8th Cir. 2013); *see Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 192 (Mo. Ct. App. 2010); *see also Graham Constr. Servs. v. Hammer & Steel Inc.*, 755 F.3d 611, 616 (8th Cir. 2014) (noting that "[r]ecovery in tort for pure economic damages are only limited to cases where there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence").  The "economic[-]loss doctrine 'was judicially created to protect the integrity of the . . . bargaining process' by 'prevent[ing] tort law from altering the allocation of costs and risks negotiated by the parties.'"  *Dunne*, 991 F.3d at 943 (alteration in original) (citing *Dannix*, 732 F.3d at 906).  "In essence, the economic[-]loss, or commercial[-]loss, doctrine denies a remedy in tort to a party whose complaint is rooted in disappointed contractual

or commercial expectations." *Thompson Thrift Constr. Inc. v. Vee-Jay Cement Contracting Co., Inc.*, No. 4:23-cv-01216-MAL, 2025 WL 4098166, at *2 (E.D. Mo. Dec. 10, 2025 ) (citing *Dannix*, 732 F.3d at 906).

Missouri recognizes "rare exceptions to the economic[-]loss doctrine." *Dannix Painting, LLC v. Sherwin-Williams Co.*, No. 4:12-cv-01640-CDP, 2012 WL 6013217, at *2 (E.D. Mo. Dec. 3, 2012); *Dannix*, 732 F.3d at 906 (describing the economic-loss doctrine as imposing "severe limitations" on the ability to bring negligence claims alongside a breach-of-contract claim). For instance, the economic-loss doctrine doesn't apply to "the negligent failure to observe and perform any portion of [a fiduciary] duty." *R&R Propane, LLC v. Tiger Payment Sols., LLC*, 756 F. Supp. 3d 734, 746 (E.D. Mo. 2024) (alternation in the original) (quoting *Emerson Elec. Co. v. Marsh & McLennan Cos.*, 362 S.W.3d 7 12 n.4 (Mo. 2012)); *see also Autry*, 332 S.W.3d at 193 ("The economic[-]loss doctrine, however, has been held not to bar an action in tort if the contract recognizes a special relationship"). The economic-loss doctrine also doesn't bar claims asserting negligence in providing professional services, *Business Men's Assur. Co. of Am. v. Graham,* 891 S.W.2d 438, 454 (Mo. Ct. App. 1994) (allowing a claim against an architect for negligent design), or where the defendant breached a public duty, *B.L. Jet Sales, Inc. v. Alton Packaging Corp.*, 724 S.W.2d 669, 672–73 (Mo. Ct. App. 1987) (allowing a claim alleging a failure to observe federal regulations creating a public duty).

### 1. Negligent and intentional misrepresentation

MD Trans asserts that Forest River and Sullivan's "false, material representations" regard "Forest River's intent to supply the minimum inventory levels pursuant to the Agreement and to limit Forest River's ability to supply said inventory to Plaintiff's competitors within a 50-mile radius." Doc. 5 at ¶ 35. And due to MD Trans's "justifiable reliance on the information

6

provided by [Forest River and Sullivan], [it] was damaged in an amount in excess of $25,000.00, including loss of profits, its anticipated bargain under the Agreement and consequential damages." *Id.* at ¶ 41. MD Trans makes similar allegations in its intentional misrepresentation claim. *Id.* at ¶¶ 34–41.

Forest River and Sullivan argue that these allegations were "incorporated into the Agreement as contractual obligations." Doc. 13 at 3–4. Meaning, "the information [Forest River and Sullivan] gave MD Trans was false because Forest River (allegedly) did not uphold its end of the bargain in the Agreement. MD Trans's loss is economic only—a loss of MD Trans's profits and anticipated bargain under the agreement, and consequential damages." *Id.* at 4. Therefore, they argue, the economic-loss doctrine bars these claims. Forest River and Sullivan apply "[t]he same analysis" to MD Trans's intentional-misrepresentation claim. *Id.* at 5–6.

MD Trans, in response, argues that various exceptions to the economic-loss doctrine apply. Doc. 21 at 4–8. It first contends that because it alleged "damages beyond economic losses under the Agreement, including those damages associated with building the necessary infrastructure and expanding its lots and facilities to accommodate Forest River's products," the economic-loss doctrine doesn't apply. *Id.*

But as Forest River and Sullivan argue, "no such damage exists here." Doc. 22 at 3. MD Trans's complaint alleges that "to meet [its] requirements under the Agreement . . . [it] undertook to build out the infrastructure necessary to offer the Forest River products it was now contractually required to offer[.]" Doc. 5 at ¶ 15; *see also id.* at ¶ 32. MD Trans fails to plausibly allege damages that are independent of Forest River's alleged breach of the Agreement. *See OS33 v. CenturyLink Commc'ns, L.L.C.*, 350 F. Supp. 3d 807, 816 (E.D. Mo. 2018) ("Numerous subsequent cases in this district have held that fraud claims are barred by the

economic[-]loss doctrine under Missouri law, unless they are independent of the contract."); *see also Thompson*, 2025 WL 4098166, at *3 (noting that for a negligent-misrepresentation claim to survive the economic-loss doctrine, some damage outside the contract must exist because of the alleged fraud); *Nestle Purina Petcare Co. v. Blue Buffalo Co. Ltd.*, 181 F.Supp.3d 618, 638–39 (E.D. Mo. 2016) (dismissing an intentional misrepresentation claim under the economic-loss doctrine because the claim was "substantially redundant of its contract claims").

Next, MD Trans asserts—in its response brief—that because it and Forest River "had a special contractual relationship, [it] may assert tort claims in addition to its claim for breach of contract." Doc. 21 at 5. But MD Trans may not amend its complaint in a brief. *Thomas v. United Steelworkers Loc. 1938*, 743 F.3d 1134, 1140 (8th Cir. 2014). In its complaint, MD Trans only describes a "business relationship" with Forest River. Doc. 5 at ¶ 15. And in *Autry*, the Missouri Court of Appeals held that to create a special contractual relationship, a fiduciary relationship needed to exist between the parties. *See Autry*, 332 S.W.3d at 193–94. The court was clear that "the existence of a business relationship does not give rise to a fiduciary relationship, nor [does] a presumption of such a relationship" trigger the exception. *Id.* at 194; *see also R&R Propane*, 756 F.Supp.3d at 747–48 (dismissing a negligence claim under the economic-loss doctrine because plaintiffs failed to plausibly plead a breach of a fiduciary duty). The Court therefore finds that the economic-loss doctrine bars MD Trans's negligent- and intentional-misrepresentation claims.

### 2. Tortious interference

In its tortious-interference claim, MD Trans asserts that it "maintained a long[-]standing and successful business selling similar products to those offered for sale by [Forest River and Sullivan] in this case." Doc. 5 at ¶ 43. And "[Forest River and Sullivan were] aware of [MD

8

Trans's] past success and sales of competing products." *Id.* at ¶ 44.  Forest River and Sullivan therefore "intentionally enticed and caused [MD Trans] to commit its time, space and resources to the anticipated sale of [Forest River's] products, in exchange for [Forest River's] promise to supply [MD Trans] with the products in question as well as an exclusive territory in which to sell said products." *Id.* at ¶ 45.  But Forest River and Sullivan "clearly did not actually desire to keep their end of the bargain to [MD Trans], as [they] wholly failed to keep their end of the bargain and have failed to supply [MD Trans] with inventory or even documents through which to order said inventory over the two[-]year period in question." *Id.* at ¶ 46.  And Forest River and Sullivan breached the exclusivity provision of the Agreement by engaging MD Trans's direct competitor. *Id.* at ¶ 48.

Forest River and Sullivan argue, however, that "[t]he actual 'interference' MD Trans alleges . . . is contractual:  that [Forest River and Sullivan] failed 'to supply [MD Trans] with inventory' it promised and 'engaged a direct competitor' and allowed it to sell Forest River vehicles 'within [MD Trans's] exclusive dealer territory.'"  Doc. 13 at 7 (citing doc. 5 at ¶¶ 46–47).  The Court agrees with Forest River and Sullivan.  Courts in this district have dismissed tortious-interference claims under the economic-loss doctrine when the claim restates its breach-of-contract claim. *See LO NG Pharmacy Corp. v. Express Scripts, Inc.*, 747 F.Supp.3d 1203, 1209 (E.D. Mo. 2024); *Weisman v. Barnes Jewish Hosp.*, No. 4:19-cv-00075-JAR, 2020 WL 2800469, at *14 (E.D. Mo. May 29, 2020); *Heartland Med., LLC v. Express Scripts, Inc.*, No. 4:17-cv-02873-JAR, 2018 WL 4216669, at *3 (E.D. Mo. Sept. 5, 2018); *Cystic Fibrosis Pharmacy, Inc. v. Express Scripts, Inc.*, No. 4:16-cv-1167-CEJ, 2016 WL 7242163, at *5 (E.D. Mo. Dec. 15, 2016); *HHCS Pharmacy, Inc. v. Express Scripts, Inc.*, No. 4:16-cv-1169-CEJ, 2016 WL 7324968, at *5 (E.D. Mo. Dec. 16, 2016).

9

MD Trans also argues that under more-recent Eighth Circuit precedent, the economic-loss doctrine no longer applies to any of its tort claims. Doc. 21 at 7 (citing *Dunne*, 991 F.3d at 943). But unlike this case, Dunne never alleged that the defendants "breached any contract[.]" Br. of Appellant at 44, *Dunne v. Res. Converting, LLC*, No. 19-2982, 2020 WL 231353 (8th Cir. January 7, 2020); *see also* Second Am. Compl., 4:16-cv-01351-SRC, *Dunne v. Resource Converting, LLC*, doc. 319. Dunne only sought "restitution for damages resulting from Defendants' *pre-contractual misstatements*, which caused Dunne to falsely believe the worthless licenses had value." Appellant's Brief at 44 (emphasis added); *cf. Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 198 (8th Cir. 1995) (stating that Missouri law prohibits "cause[s] of action in tort where the losses [from the alleged breach of contract] are purely economic").

Yet even though Dunne never asserted a breach-of-contract claim, the district court found that the economic-loss doctrine applied because Dunne sought "to recover in tort economic losses that are contractual in nature." *Dunne v. Res. Converting, LLC*, No. 4:16-cv-1351-DDN, 2017 WL 2264807, *8 (E.D. Mo. May 24, 2017). The Eighth Circuit reversed the district court holding that on *Dunne*'s facts, the economic-loss doctrine did not apply to Dunne's misrepresentation claims. *See Dunne*, 991 F.3d at 943. Here however, as explained above, MD Trans alleges purely pecuniary losses in tort resulting from an alleged breach of contractual duties. *See* doc. 5. Thus, on these facts, the economic-loss doctrine bars MD Trans's tort claims. *See Rockport Pharmacy*, 53 F.3d at 198.

**V.    Conclusion**

Accordingly, the Court grants Forest River and Sullivan's [12] motion.  The Court therefore dismisses Sullivan from this case.  The Court directs Forest River to file a responsive pleading no later than August 21, 2026.  *See* doc. 15.

So ordered this 7th day of August 2026.

_____

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE